**Exhibit E**

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4

5

6   JAMES RUTHERFORD, an individual,)
                                     )
7            Plaintiff,              )        CERTIFIED COPY
                                     )
8                 vs.                )
                                     )   Case No.:
9   USA GAS, a business of unknown   )   2:19-cv-01448--JAK-FFMx
    form; THRIFTY OIL CO., a         )
10  California corporation; and      )
    DOES 1-10, inclusive,            )
11                                   )
             Defendants.             )
12                                   )
    _____)
13

14

15

16                       DEPOSITION OF

17                     KENNETH ARRINGTON

18                   LOS ANGELES, CALIFORNIA

19                      JANUARY 8, 2020

20

21

22

23
    Reported by:
24  ELSA L. ORMES
    CSR NO. 8717
25  NO. 20-86605

1        Q.   -- is presently a disabled parking stall?

2        A.   The -- my main assumption was that the primary

3    parking space it was the one that was best marked out but it

4    is still somewhat, you know, faded and is the one on the west

5    side of the parking space.  However, there were markings on

6    the pavement on the east side of the building, extremely

7    faded, but I did inspect that area because one of my

8    recommendations as it related to the accessible parking on

9    the west side of the store under surveyor's notes I

10   indicated, "Consider blocking out all accessible striping at

11   this location and re-surface and re-stripe accessible space

12   at the east side of the store.  That location at the west

13   side" or -- "the location at the west side can be turned into

14   one or two parking spaces instead."

15        The reason I made that comment was because the

16   location on the west side of the building has excessive

17   slopes in both the aisle and the space.  The easiest

18   correction at this facility for the accessible parking would

19   simply be to relocate it back to where it once was on the

20   east side of the store because there are no excessive slopes

21   on that side.  So I was trying to provide that recommendation

22   over there, so in my report I did provide information as it

23   related to that space.

24        Q.   In your response you said where the stall was or

25   words to that effect.  So sounds like you agree that the

1    stall to the east is a former disabled stall, parking stall,

2    and is not a presently used disabled parking stall?

3        A.    I would concur with that.   And if you look at the

4    report and on I believe it's the last page the no accessible

5    signage has been posted at the head of the parking space, but

6    when you look at those pictures you are going to find that

7    those pictures actually have signage that states no parking,

8    period.

9        Q.    What I'm trying to get at for example let's go to --

10   you have there in your report marked as Exhibit 1, the left

11   hand column, has an ABL number.   I assume that's

12   accessibility barrier list.

13       A.    Architectural Barrier list number, yeah.

14       Q.    All right.   So let's go down to ABL -- starting with

15   ABL number 9, 10, 11 and 12.

16       A.    Yes.

17       Q.    Would you agree that all those assume that there is

18   a disabled parking stall to the east of the store?

19           MR. HASHEMI:   Objection.   Compound.

20           You can go ahead and answer.

21           THE WITNESS:   I provided these items 9, 10, 11 and

22   12 as the barriers if you were to relocate the accessible

23   parking from the west side to the east side, not that it's

24   currently an accessible parking space, but if it were to be

25   made an accessible parking space those barriers would need to

1    be resolved.

2    BY MR. GRAVELLE:

3        Q.   Are there any grounds or bases for any of the

4    opinions set forth in your report marked as Exhibit 1 that

5    are not set forth in the report?

6        A.   No.  My -- all of the information on the report goes

7    back to the 1991 ADA standards and the 2010 accessibility

8    standards and the current 2016 California Building Code.

9    Those were the only assumptions that I made based upon those

10   minimum standards.

11       Q.   When you say those are the only assumptions I made,

12   do you mean those are the only bases --

13       A.   Yeah.

14       Q.   -- of what you put in the report?

15       A.   Yes, sir.

16       Q.   Okay.  So you would agree then that there are no

17   other bases for what is set forth in this report marked as

18   Exhibit 1 other than the bases that are set forth in Exhibit

19   1?

20       A.   Yes, sir.

21       Q.   Okay.  Is there anything in the report that has been

22   marked as Exhibit 1 that you believe is inaccurate or

23   incorrect?

24       A.   There is one item that I made a typo on.  If you

25   look at ABL number 3 I had indicated slope in the accessible

1     A.    They are basically -- they are shorthand notes that

2    I took to prepare the report itself.  And at the time back in

3    May, you know, once I provide the notes in here, it's just

4    shorthand of the actual finding itself, you know.  I discard

5    them and, you know, get rid of them in the trash.

6     Q.    Did you make any changes to the report marked as

7    Exhibit 1 based on any communication from anyone?

8     A.    No, sir.

9     Q.    Did you consider or rely upon either the Complaint

10   or the First Amended Complaint that was filed in this case in

11   preparing the report?

12    A.    Not in preparing the report, only to inspect what

13   elements were identified within the claim.

14    Q.    If there were elements referred to in the Complaint

15   but not referred to in your report, what conclusion can we

16   draw about that?

17         MR. HASHEMI:  Hypothetical, not based on admissible

18   facts, calls for speculation.

19         THE WITNESS:  Can you ask that question again.  I

20   apologize.

21   BY MR. GRAVELLE:

22    Q.    Sure.  What about barriers that are alleged in the

23   Complaint but are not addressed in your report marked as

24   Exhibit 1 -- what conclusion can one draw from that, that is,

25   that you don't believe it's a barrier or you just failed to

1    address it?

2        MR. HASHEMI:  Lacks foundation.

3        THE WITNESS:  I would say if it's not in my report,

4    it's not a barrier.  I haven't identified it as a barrier

5    and, therefore, it means either the minimum standards of the

6    1991 ADA, the 2010 standards or the 2016 whichever is most

7    stringent.

8    BY MR. GRAVELLE:

9        Q.   Have you had any conversations with Mr. Rutherford

10   about the report marked as Exhibit 1?

11       A.   No, sir.

12       Q.   Is there any information you would have liked to

13   have had but did not have before you prepared this report

14   marked as Exhibit 1?

15       A.   I would have liked to have known when certain

16   elements were in fact implemented, so when the accessible

17   parking spaces were actually installed so in that way

18   essentially, you know, I would know what California Building

19   Code was most applicable at that time.  However, I did refer

20   basically back to the 1991 standards for the minimum

21   standards to identify from that, you know, you know, to

22   essentially find out, you know, whether or not it's -- it

23   meets compliance or not.

24       Q.   Is there any other information you would have liked

25   to have had but did not have before preparing this report

1       Q.    On Exhibit 1, ABL Number 8, you opine there is no

2    accessible right to the public right of way extending to the

3    entrance.

4             Do you see that?

5       A.    Yes, sir.

6       Q.    Explain for me why you don't think there is an

7    accessible route?

8       A.    This item here is somewhat subjective because it's

9    really not identified as to where the accessible route to

10   gain access to the entrance of the store is from the city

11   sidewalk.  Essentially you know I, you know, walked the

12   perimeter of the parking lot.  In this type of scenario the

13   accessible route would have to extend from the city sidewalk

14   and would need some -- basically a 48-inch path which would

15   be accessible and that should be identified to an individual

16   with a disability and it wasn't exactly clear where that was.

17   And so, therefore, as I'm looking at it it's kind of

18   subjective, you know.  I think I identified kind of a dip

19   along the one street that's kind of a drainage swell.  That

20   doesn't necessarily have to be where the accessible public

21   right of way would be from.  However, it just wasn't clear

22   so, therefore, the assumption is that there is no accessible,

23   you know, accessible route for an individual with a

24   disability.

25       Q.    In other words you couldn't find it so you concluded

1      that it did not exist?

2              MR. HASHEMI:  Objection.  Argumentative.

3              THE WITNESS:  In other words, if I couldn't find it,

4      an individual with a disability would also not be able to

5      identified it because it wasn't identified through

6      directional signage or some sort of cross hatching or

7      something along those lines which would actually give a

8      visual idea as to where it was.

9      BY MR. GRAVELLE:

10         Q.    So you agree with my statement which is, since you

11     could not find it you concluded it did not exist.  Correct?

12             MR. HASHEMI:  Same objections.

13     BY MR. GRAVELLE:

14         Q.    Correct?

15         A.    Correct.

16         Q.    Does that route have to be marked?

17         A.    The route should be identified.  So directional

18     signage, crosshatch, something.  You would have to go through

19     a vehicular area in this type of scenario which is

20     acceptable.  However, if an individual with a disability is

21     looking for that, where do they go in that scenario, you

22     know.  That leads me to my conclusion that there is no

23     accessible route.  There may be in some location on that

24     property an accessible route, but it's not identified to an

25     individual where it is and how they gain access to the