Douglas A. Gravelle (SBN 166110)
Hinson Gravelle & Adair LLP
28470 Avenue Stanford, Suite 350
Valencia, CA 91355
Telephone: (661) 294-0116
Facsimile: (661) 294-0134
gravelle@hinsongravelle.com

Attorneys for Defendants Thrifty Oil Co. and
Tesoro Refining and Marketing Company LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>USA GAS, a business of unknown form; THRIFTY OIL CO., a California corporation; and Does 1-10, inclusive,<br><br>Defendants. | Case # 2:19-CV-01448-JAK-FFMx<br><br>**DECLARATION OF NEAL CASPER IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hon. John A. Kronstadt<br><br>Action Filed: 12/20/18<br>Trial Date: Not Set Yet<br><br>Hearing Date: April 20, 2020<br>Hearing Time: 8:30 a.m.<br>Hearing Courtroom: 10B |

1.     I am providing this Declaration in support of the Motion for Partial Summary Judgment ("Motion") filed by Thrifty Oil Co. and Tesoro Refining & Marketing Company LLC (collectively, "Defendants") in this case.

2.     I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently thereto.

3.     Among the many professional licenses and certifications I hold, I am a licensed California General Contractor (#B782059) and I am a Certified Access Specialist ("CASp") in California (#020).  My CASp number (#020) means I was the twentieth person in California to be certified as a CASp.

4.     I am President of Casper Development Resources, Inc., which focuses on disability accessibility consulting and construction management, and

since 2004 in such role, I have inspected well over 1,000 properties to assess disability accessibility compliance.  I am also certified by the International Code Council as an Accessibility Inspector & Plans Examiner.

5.     I have been to the real property commonly known as 401 East 6th Street, Beaumont, California ("Property").  More specifically, on November 21, 2019 I personally visited the Property and inspected, measured and photographed various alleged disability accessibility barriers thereat.  The Property is improved with a USA-branded service station.  There is one disabled parking stall (with an access aisle) at the Property, which parking stall and access aisle are located to the *west* of the convenience store at the Property and are hereafter referred to as the "Disabled Parking Stall" and "Access Aisle".  There is also one convenience store at the Property, and within that store, a sales counter where customers purchase and pay for products, including fuel.

6.     The following are some of my opinions concerning some of the alleged disability barriers at the Property based upon my experience, knowledge and inspection of the Property.  As used below, "ADA" means Americans With Disabilities Act, "ADA Standards" means the most recently-promulgated ADA Standards (the 2010 ADA Standards), and "CBC" means the California Building Code.

### Section 302 of ADA Standards

7.     The Disabled Parking Stall and Access Aisle do not violate Section 302 of the ADA Standards.  Section 302 of the ADA Standards requires that surfaces be "stable, firm, and slip resistant", that "openings" (such as drainage grates) not be greater than ½ inch, and that "elongated openings" be oriented perpendicular to the dominant direction of travel.  Here, the Disabled Parking Stall and Access Aisle are constructed of asphalt, which is considered to be a stable, firm, and slip resistant surface.  Also, the Disabled Parking Stall and Access Aisle

2

Declaration of Neal Casper
(2:19-cv-01448-JAK-FFMx)

do not contain any drainage grates or other constructed elements that have openings.

### Disabled Parking Stall and Access Aisle Are At Same Level

8.     The Disabled Parking Stall and Access Aisle (which are adjacent to each other) are at the same level.  That is, both are on the same asphalt surface at the Property, adjacent and flush against each other, and there is no step, ledge or curb between the two elements.  Attached hereto as Exhibit G is a photograph I took of the Disabled Parking Stall (with the sign at the "head" of the stall) and the access aisle (with the blue painted cross-hatching) on November 21, 2019, which photograph accurately depicts what is shown in the photograph and which shows the surface of the Disabled Parking Stall and Access Aisle are flush with each other and at the same level.

### Accessible Route from Disabled Parking Stall to Convenience Store

9.     There is an accessible route from the Disabled Parking Stall to the convenience store at the Property.  Under the ADA and CBC, an "accessible route" is defined as a "continuous, unobstructed path".  Here, there is a continuous, unobstructed asphalt pathway at least 36 inches wide from the Disabled Parking Stall to the convenience store at the Property.  The "running slopes" of that asphalt pathway do not exceed 5% (the maximum allowed under the ADA and CBC).  Except for one small area, the "cross slopes" of that asphalt pathway do not exceed 2.08% (the maximum allowed under the ADA or CBC).  It is true that in one relatively small area, the cross-slope ranges from 2.2% to 3%.  However, if one measures the asphalt surface of the 4 feet immediately adjacent to and north of this small area, the cross-slopes there are under 2.08%.  Hence, a disabled patron can travel from the Disabled Parking Stall to the convenience store at the Property using the asphalt surface at the Property without needing to travel over any cross-slopes that exceed 2.08%.

## **Clear Floor Space in Front of Sales Counter**

10.     A "parallel approach" is when a patron is seated in their wheelchair "parallel" to a counter, as opposed to facing a counter perpendicular to a counter (which is known as a "forward approach").

11.     Attached as Exhibit H are four photographs I took of the sales counter on November 21, 2019, which photographs accurately depict the sales counter and the clear floor space in front of it.

12.     There is sufficient floor space in front of the sales counter in the convenience store at the Property to allow for a parallel approach by a disabled patron in a wheelchair as required by Section 904.4.1 of the ADA Standards.  First, the ADA (including Section 904.4.1 of the ADA Standards) does not require that *both* a parallel and forward approach be possible to this sales counter; rather, one just must be able to make *either* a forward or parallel approach.  Second, under the ADA, in order to ensure there is clear floor space for a parallel approach, there needs to be clear floor space that is greater than 30 inches by 48 inches in front of the sales counter.  Here, there is a clear floor space that is greater than 30 inches by 48 inches in front of the sales counter.  Hence, the sales counter provides for a parallel approach in satisfaction of Section 904.4.1 of the ADA Standards.

## **"Depth" of Sales Counter**

13.     Attached as Exhibit I is a page with six photographs I took of the sales counter (with the lower portion of the counter on the front of it) on November 21, 2019, which photographs accurately depict what is shown in the photographs.

14.     According to measurements I took on November 21, 2019, the lower portion of the counter is not more than 34 inches above the finished floor, and it is more than 36 inches long.  Hence, it satisfies the height and length requirements of the ADA and CBC.

Declaration of Neal Casper
(2:19-cv-01448-JAK-FFMx)

15.     The lower portion of the sales counter does not violate Section 904.4 of the ADA Standards (which requires that the "depth" of the accessible portion of the counter [i.e., the lower portion of the counter] be the same "depth" as the other portion of the counter [i.e., the higher portion of the counter]).  I reach this opinion as follows.  First, it is my understanding the sales counter (with the lower portion of the counter on the front of it) has been there (and not modified) since March 15, 2012 (I state this not as admissible evidence but simply to state one of my assumptions).  Second, I do not dispute the "depth" of the lower portion of the counter is less than the "depth" of the other portion of the sales counter.  However, under the ADA Standards, elements of a facility (*e.g.*, counters) that were installed or built before March 15, 2012 and that complied with the 1991 ADA Standards at such time, and which were not altered thereafter, are not required to be modified to meet any *new* requirements in the ADA Standards.  This is commonly known as the "safe harbor provision" of the ADA Standards.  Here, the "depth" requirement in Section 904.4 of the ADA Standards *first* appeared when the ADA Standards were promulgated in 2010.  There was no "depth" requirement in the 1991 ADA Accessibility Guidelines, which were the predecessor to the ADA Standards.  Hence, presuming this sales counter (including the lowered portion of it) existed as of March 15, 2012 in its present configuration and has not been modified since then, the new "depth" requirement of Section 904.4 of the ADA Standards does not apply to this sales counter.

**Length of Disabled Parking Stall**

16.     The length of the Disabled Parking Stall does not violate Section 502 of the ADA Standards.  While the ADA Standards have requirements for the *width* of a disabled parking stall, they do not have requirements for the *length* of a disabled parking stall.

### "Van Accessible Space at the *East* Side of the Store"

17. The alleged "van accessible space at the east side of the store" does not violate any ADA or CBC requirements, including any signage, fading or length requirements. This alleged "van accessible space at the east side of the store" is not a disabled parking stall; hence it is not subject to the requirements of the ADA or CBC for disabled parking spaces. While this space was *formerly* a disabled parking space, any signs identifying it as such have been removed. The former blue paint striping on the surface of this space has been blacked out. While some of the black paint has worn off, thus allowing some of the former blue paint to be visible on the surface, this is not a violation of the ADA or CBC, nor does this make it a disabled parking stall.

### Accessible Route from City Sidewalk to Convenience Store

18. There is an accessible route from the city sidewalk to the convenience store at the Property. More specifically, one may enter upon the northeast portion of the Property directly from the city sidewalk and from there traverse south to the convenience store without encountering an obstruction, a running slope greater than 5% or a cross-slope greater than 2.08%. Attached hereto as Exhibit J are eight (8) photographs I took that depict this accessible route and the slopes I measured on that route. There is no requirement that this route be marked on the pavement, identified with signs or separated from vehicular traffic.

I declare under penalty of perjury under the laws of both the United States of America and the State of California that the foregoing is true and correct and that this Declaration was executed on January 10, 2020 in La Mesa, California.

By: _____

Neal Casper

Declaration of Neal Casper
(2:19-cv-01448-JAK-FFMx)