**Exhibit E**

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3
 4
 5
 6   JAMES RUTHERFORD, an individual,)
                                     )
 7           Plaintiff,               )    CERTIFIED COPY
                                     )
 8                 vs.               )
                                     )    Case No.:
 9   USA GAS, a business of unknown  )    2:19-cv-01448--JAK-FFMx
     form; THRIFTY OIL CO., a        )
10   California corporation; and     )
     DOES 1-10, inclusive,           )
11                                   )
             Defendants.             )
12                                   )
                                     )
13   _____
14
15
16                    DEPOSITION OF
17                  KENNETH ARRINGTON
18               LOS ANGELES, CALIFORNIA
19                  JANUARY 8, 2020
20
21
22
23
     Reported by:
24   ELSA L. ORMES
     CSR NO. 8717
25   NO. 20-86605
```

1    Q.   -- is presently a disabled parking stall?
2    A.   The -- my main assumption was that the primary
3  parking space it was the one that was best marked out but it
4  is still somewhat, you know, faded and is the one on the west
5  side of the parking space.  However, there were markings on
6  the pavement on the east side of the building, extremely
7  faded, but I did inspect that area because one of my
8  recommendations as it related to the accessible parking on
9  the west side of the store under surveyor's notes I
10 indicated, "Consider blocking out all accessible striping at
11 this location and re-surface and re-stripe accessible space
12 at the east side of the store.  That location at the west
13 side" or -- "the location at the west side can be turned into
14 one or two parking spaces instead."
15        The reason I made that comment was because the
16 location on the west side of the building has excessive
17 slopes in both the aisle and the space.  The easiest
18 correction at this facility for the accessible parking would
19 simply be to relocate it back to where it once was on the
20 east side of the store because there are no excessive slopes
21 on that side.  So I was trying to provide that recommendation
22 over there, so in my report I did provide information as it
23 related to that space.
24   Q.   In your response you said where the stall was or
25 words to that effect.  So sounds like you agree that the

1  stall to the east is a former disabled stall, parking stall,
2  and is not a presently used disabled parking stall?
3      A.   I would concur with that.  And if you look at the
4  report and on I believe it's the last page the no accessible
5  signage has been posted at the head of the parking space, but
6  when you look at those pictures you are going to find that
7  those pictures actually have signage that states no parking,
8  period.
9      Q.   What I'm trying to get at for example let's go to --
10 you have there in your report marked as Exhibit 1, the left
11 hand column, has an ABL number.  I assume that's
12 accessibility barrier list.
13     A.   Architectural Barrier list number, yeah.
14     Q.   All right.  So let's go down to ABL -- starting with
15 ABL number 9, 10, 11 and 12.
16     A.   Yes.
17     Q.   Would you agree that all those assume that there is
18 a disabled parking stall to the east of the store?
19         MR. HASHEMI:  Objection.  Compound.
20         You can go ahead and answer.
21         THE WITNESS:  I provided these items 9, 10, 11 and
22 12 as the barriers if you were to relocate the accessible
23 parking from the west side to the east side, not that it's
24 currently an accessible parking space, but if it were to be
25 made an accessible parking space those barriers would need to

1    be resolved.
2    BY MR. GRAVELLE:
3        Q.    Are there any grounds or bases for any of the
4    opinions set forth in your report marked as Exhibit 1 that
5    are not set forth in the report?
6        A.    No.  My -- all of the information on the report goes
7    back to the 1991 ADA standards and the 2010 accessibility
8    standards and the current 2016 California Building Code.
9    Those were the only assumptions that I made based upon those
10   minimum standards.
11       Q.    When you say those are the only assumptions I made,
12   do you mean those are the only bases --
13       A.    Yeah.
14       Q.    -- of what you put in the report?
15       A.    Yes, sir.
16       Q.    Okay.  So you would agree then that there are no
17   other bases for what is set forth in this report marked as
18   Exhibit 1 other than the bases that are set forth in Exhibit
19   1?
20       A.    Yes, sir.
21       Q.    Okay.  Is there anything in the report that has been
22   marked as Exhibit 1 that you believe is inaccurate or
23   incorrect?
24       A.    There is one item that I made a typo on.  If you
25   look at ABL number 3 I had indicated slope in the accessible

```
 1   space measures between 2.5 to 4.4 caused by uneven surface.
 2   And if you look just above that in ABL number 2, I refer to
 3   the accessible space in that one as well.  Item 2 is the
 4   accessible space and item 3 when you go to the pictures you
 5   will note that those are the pictures that support the
 6   accessible aisle has excessive slope from 2.5 to 4.4 percent,
 7   so I apologize.                  [f]
 8        Q.   Just so we're clear, ABL number 3 is actually a
 9   reference to the accessible aisle or the disabled parking
10   stall to the west of the convenience store?
11        A.   Yes, sir.
12        Q.   Other than what you just described to me, is there
13   anything else in the report that has been marked as Exhibit 1
14   that you believe is inaccurate or incorrect?
15        A.   No, sir.
16        Q.   Is anything in the report incomplete?
17        A.   Not to my knowledge.  No, sir.
18        Q.   Did you prepare any drafts of the report?
19        A.   No, sir.  I -- what I typically do is I take my
20   handwritten notes and my pictures and once I prepare the
21   report I, you know, I get rid of my, you know, my handwritten
22   notes and it's essentially my document.
23        Q.   So do you presently have handwritten notes?
24        A.   No.
25        Q.   What happened to them?
```

1      A.   They are basically -- they are shorthand notes that
2  I took to prepare the report itself.  And at the time back in
3  May, you know, once I provide the notes in here, it's just
4  shorthand of the actual finding itself, you know.  I discard
5  them and, you know, get rid of them in the trash.
6      Q.   Did you make any changes to the report marked as
7  Exhibit 1 based on any communication from anyone?
8      A.   No, sir.
9      Q.   Did you consider or rely upon either the Complaint
10 or the First Amended Complaint that was filed in this case in
11 preparing the report?
12     A.   Not in preparing the report, only to inspect what
13 elements were identified within the claim.
14     Q.   If there were elements referred to in the Complaint
15 but not referred to in your report, what conclusion can we
16 draw about that?
17          MR. HASHEMI:  Hypothetical, not based on admissible
18 facts, calls for speculation.
19          THE WITNESS:  Can you ask that question again.  I
20 apologize.
21 BY MR. GRAVELLE:
22     Q.   Sure.  What about barriers that are alleged in the
23 Complaint but are not addressed in your report marked as
24 Exhibit 1 -- what conclusion can one draw from that, that is,
25 that you don't believe it's a barrier or you just failed to

THE SULLIVAN GROUP OF COURT REPORTERS

16

1       address it?
2           MR. HASHEMI:  Lacks foundation.
3           THE WITNESS:  I would say if it's not in my report,
4   it's not a barrier.  I haven't identified it as a barrier
5   and, therefore, it means either the minimum standards of the
6   1991 ADA, the 2010 standards or the 2016 whichever is most
7   stringent.
8   BY MR. GRAVELLE:
9       Q.   Have you had any conversations with Mr. Rutherford
10  about the report marked as Exhibit 1?
11      A.   No, sir.
12      Q.   Is there any information you would have liked to
13  have had but did not have before you prepared this report
14  marked as Exhibit 1?
15      A.   I would have liked to have known when certain
16  elements were in fact implemented, so when the accessible
17  parking spaces were actually installed so in that way
18  essentially, you know, I would know what California Building
19  Code was most applicable at that time.  However, I did refer
20  basically back to the 1991 standards for the minimum
21  standards to identify from that, you know, you know, to
22  essentially find out, you know, whether or not it's -- it
23  meets compliance or not.
24      Q.   Is there any other information you would have liked
25  to have had but did not have before preparing this report

THE SULLIVAN GROUP OF COURT REPORTERS

17

1   Q.   On Exhibit 1, ABL Number 8, you opine there is no
2   accessible right to the public right of way extending to the
3   entrance.
4        Do you see that?
5   A.   Yes, sir.
6   Q.   Explain for me why you don't think there is an
7   accessible route?
8   A.   This item here is somewhat subjective because it's
9   really not identified as to where the accessible route to
10  gain access to the entrance of the store is from the city
11  sidewalk.  Essentially you know I, you know, walked the
12  perimeter of the parking lot.  In this type of scenario the
13  accessible route would have to extend from the city sidewalk
14  and would need some -- basically a 48-inch path which would
15  be accessible and that should be identified to an individual
16  with a disability and it wasn't exactly clear where that was.
17  And so, therefore, as I'm looking at it it's kind of
18  subjective, you know.  I think I identified kind of a dip
19  along the one street that's kind of a drainage swell.  That
20  doesn't necessarily have to be where the accessible public
21  right of way would be from.  However, it just wasn't clear
22  so, therefore, the assumption is that there is no accessible,
23  you know, accessible route for an individual with a
24  disability.
25  Q.   In other words you couldn't find it so you concluded

THE SULLIVAN GROUP OF COURT REPORTERS

1    that it did not exist?

2              MR. HASHEMI:  Objection.  Argumentative.

3              THE WITNESS:  In other words, if I couldn't find it,

4    an individual with a disability would also not be able to

5    identified it because it wasn't identified through

6    directional signage or some sort of cross hatching or

7    something along those lines which would actually give a

8    visual idea as to where it was.

9    BY MR. GRAVELLE:

10         Q.   So you agree with my statement which is, since you

11   could not find it you concluded it did not exist.  Correct?

12             MR. HASHEMI:  Same objections.

13   BY MR. GRAVELLE:

14         Q.   Correct?

15         A.   Correct.

16         Q.   Does that route have to be marked?

17         A.   The route should be identified.  So directional

18   signage, crosshatch, something.  You would have to go through

19   a vehicular area in this type of scenario which is

20   acceptable.  However, if an individual with a disability is

21   looking for that, where do they go in that scenario, you

22   know.  That leads me to my conclusion that there is no

23   accessible route.  There may be in some location on that

24   property an accessible route, but it's not identified to an

25   individual where it is and how they gain access to the

```
 1              I, ELSA L. ORMES, a Certified Shorthand Reporter
 2     of the State of California, do hereby certify:
 3              That the foregoing proceedings were taken
 4     before me at the time and place herein set forth; that
 5     any witness in the foregoing proceedings, prior to
 6     testifying, were administered an oath; that a record
 7     of the proceedings was made by me using machine
 8     shorthand which was thereafter transcribed under my
 9     direction; that the foregoing transcript is a true
10     record of the testimony given.
11              Further, that if the foregoing pertains to
12     the original transcript of a deposition in a Federal
13     Case, before completion of the proceedings, review of
14     the transcript {X} was { } was not requested.
15              I further certify I am neither financially
16     interested in the action nor a relative or employee of
17     any attorney or any party to this action.
18              IN WITNESS WHEREOF, I have this day subscribed
19     my name.
20
21     Dated: January 9, 2020
22                                 _____
                                   ELSA L. ORMES
23                                 CSR Lic. No. 8717
24
25
```

THE SULLIVAN GROUP OF COURT REPORTERS