**Exhibit L**

UNITES STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES RUTHERFORD, an individual,)
                             )
                Plaintiff, )
                             )
         vs.             ) Case No.
                             ) 2:19-cv-01448-JAK-FFMx
USA GAS, a business of unknown )
form; THRIFTY OIL CO., a )
California corporation; and )
DOES 1-10, inclusive, )
                             )
             Defendants. )
_____)

DEPOSITION OF

JAMES RUTHERFORD

LOS ANGELES, CALIFORNIA

OCTOBER 23, 2019

Reported by:
LELIA C. HASUIKE
CSR 11082
No. 19-83888


THE SULLIVAN GROUP OF COURT REPORTERS
SULLIVANCOURTREPORTERS.COM
PHONE 855.525.3860 | 323.938.8750

1        Q     And on May 17th when you went there, tell me

2    exactly where you went on the site once you entered the

3    site.

4        A     Yeah.  Unfortunately, I don't have much

5    recollection of the May 17th visit.  I just don't

6    remember.

7        Q     Can you recall anything about the May 17

8    visit?

9        A     No.  No.

10        Q     Do you recall any problems you may have

11    encountered on May 17th?

12        A     No.  I'm sorry.  I don't.

13        Q     Is there a reason you recall going there on

14    May 17th but cannot recall anything about it?

15        A     I just -- I know that I was there in May, and

16    I remember that I had a receipt for being there in May.

17    But I don't remember anything else why I was there.  I

18    don't think I got gas.  So I'm not sure why I was there.

19        Q     And just so we're clear, do you recall

20    experiencing any problems on May 17th, 2018, while at

21    the service station?

22        A     Yeah, I don't recall.

23        Q     So have you now told me everything you can

24    recall about your visit to the service station on

25    May 17, 2018, including any problems you may have

THE SULLIVAN GROUP OF COURT REPORTERS

1    site?

2         A    As I recall, yes.

3         Q    So let's turn now to what you described as a

4    visit to the site in the past 90 days.  Do you recall a

5    recollection of where you were coming from on that

6    occasion?

7         A    No.

8         Q    On that occasion do you recall where you were

9    going to?

10        A    No.

11        Q    Do you recall why you stopped at the service

12   station on this occasion?

13        A    Yes.

14        Q    And what was the reason or reasons?

15        A    To see if they had made the parking

16   compliant, ADA compliant.

17        Q    Any other reason?

18        A    I don't recall.

19        Q    Did you buy any fuel or food or beverage or

20   any other products?

21        A    Not that I recall.

22        Q    Did you actually go onto the site on this

23   occasion, or did you just drive by it?

24        A    I think I was on the property.

25        Q    Did you get out of your car?

```
1        A      I don't think so.

2        Q      You were driving your Lexus?

3        A      Yes.

4        Q      Were you alone?

5        A      Yes.

6        Q      Would it be accurate to say that on this

7   occasion, you simply drove across the lot to see if any

8   changes had been made but you did not stop on the lot?

9        MR. HASHEMI:  Argumentative.

10       THE WITNESS:  Yeah.  I mean, that's -- yeah.  I

11  would have drove close to the parking area, handicap

12  accessible parking, to see if -- to inspect it from the

13  car to see if any changes had been made, correct.

14       BY MR. GRAVELLE:

15       Q      Have you now told me everything you can

16  recall about this most recent visit to the site within

17  the past 90 days?

18       A      Yes, sir.

19       Q      Have you now told me today about all

20  occasions you can recall visiting the site?

21       A      I believe so, yes.

22       Q      And have you now told me today about all

23  reasons you believe there are ADA problems at the site?

24       MR. HASHEMI:  Calls for expert testimony.

25  Compound.
```

1    questions.

2         MR. HASHEMI:  No problem.

3              Are we on record still?

4         MR. GRAVELLE:  Yes, we are.

5         Q    Okay.  Mr. Rutherford, I see in one of the

6    pictures in Exhibit 3 you have your Husky level, and

7    I -- this is a sincere question.  I don't want to come

8    off as facetious, but I really got to know.  Because

9    when I see this, my initial reaction is he's using a

10   one-foot level because he's trying to skew the results

11   instead of D.O.J. recommended two-foot level.

12             You seem to be pretty knowledgeable in this

13   area, so why were you using a one-foot level?

14        A    How do I answer that?  I guess the answer is

15   that's what I've always used.

16        MR. GRAVELLE:  I'd suggest we take maybe a

17   10-minute break.

18        MR. HASHEMI:  Yeah, that's fine.

19        MR. GRAVELLE:  All right.  We're off the record.

20             (Brief recess.)

21        MR. GRAVELLE:  We're back on the record.

22        Q    The -- what you described as the disabled

23   parking stall to the left of the convenience store where

24   the white and blue car are on Exhibit 4, do you recall

25   that?

1      A      Yes.

2      Q      Okay.  You don't believe that is a disabled

3  parking stall, do you?

4      A      I do not.  That's correct.

5      Q      You believe it previously was a disabled

6  parking stall but no longer is; correct?

7      MR. HASHEMI:  Are you referring to this

8  (indicating)?

9      MR. GRAVELLE:  (Nonverbal response.)

10      THE WITNESS:  Correct.

11      BY MR. GRAVELLE:

12      Q      The fact that it is no longer a disabled

13  parking stall, do you have a problem with how it is

14  right now?

15      MR. HASHEMI:  Objection.  Vague.

16      THE WITNESS:  I don't know how it is right now.

17      BY MR. GRAVELLE:

18      Q      Okay.  Well, looking at -- that's a fair

19  response.  Looking on page 2 of Exhibit 3, which I can

20  represent to you and your counsel appears to be a

21  photograph of that stall we're referring to --

22      MR. HASHEMI:  In it's current state?

23      MR. GRAVELLE:  Well, I don't recall when this

24  photograph -- I don't know when the photograph was

25  taken, and I don't know the current state.

```
1    it.  Do you have difficulty walking?

2         A    On occasion.

3         Q    Do you have difficulty standing?

4         A    On occasion.

5         Q    Do you have difficulty sitting?

6         A    Again, on occasion.

7         Q    Do you have difficulty grasping objects?

8         A    Yes.

9         Q    Have you ever been diagnosed by a healthcare

10   provider with -- have you ever -- strike that.

11        Have you ever been diagnosed by any

12   healthcare provider with respect to any condition that

13   you believe may make it difficult for you to walk,

14   stand, sit, or grasp objects?

15        MR. HASHEMI:  Objection.  Compound.

16   Argumentative.

17            Go ahead.

18        THE WITNESS:  Yes.

19        BY MR. GRAVELLE:

20        Q    And what are those -- what is that condition

21   or those conditions?

22        A    So I've been diagnosed with a spinal

23   stenosis, herniated disk, possible fractured sacrum,

24   inflamed -- what do you call it? -- oh, for crying out

25   loud -- facet -- facet, f-a-c-e-t, joints, degenerative
```

1   when you -- in the course of the day, how often do you

2   use a rollator as compared to not using a rollator when

3   you're outside of your house?

4         A    During -- rephrase the question, please.

5         Q    Sure.  Sure.

6         MR. HASHEMI:  Let me just object to the last

7   question as it lacks foundation, it's argumentative, and

8   mischaracterizes the unverified allegations of the

9   Riverside District Attorney's office.  But let's

10  proceed.

11        BY MR. GRAVELLE:

12        Q    Yeah.  So have you on any occasions ever

13  opened doors manually instead of pressing a disabled

14  button?

15        A    Sure.

16        Q    And have you ever frequented businesses

17  without using your rollator?

18        A    Yes.

19        Q    If you had to estimate over the last two

20  years, what percentage of time -- times do you frequent

21  businesses not using your rollator?  Or you can -- I'm

22  happy to ask it as what percentage of time over the last

23  years have you frequented businesses using your rollator

24  if it's easier?

25        A    Over the past two years?

1        Q    In general, yes.  I'm trying to make it a

2   reasonable time frame.  And I'm looking at the period in

3   which the allegations of our complaint pertain to.

4        A    Okay.  I'd really be guessing because, again,

5   I don't keep notes.  I'd say 20 percent.

6        Q    Of the time?

7        A    Yes.

8        Q    You use the rollator?

9        A    Right.  80 percent of the time I don't.  And,

10   again, that's a guess.

11        Q    Other than a rollator, do you need --

12        A    And that's -- excuse me.  Let me -- I should

13   really finish with -- and that's in the past, and that

14   doesn't presume that that's going to be in the future as

15   well.  I mean, one of the problems that I have is that

16   it is degenerative.  And so it's -- the prognosis --

17   it's not going to heal.  I'm not going to heal.  I'm not

18   going to get better.  It's -- part of it is old age.

19   It's only going to get worse, and so the future, you

20   know, I'll be using it more than I ever have, so...

21        Q    Do you have a disabled placard from the

22   Department of Motor Vehicles?

23        A    Yes, I do.

24        Q    And have you had that continuously since

25   January 1, 2018?

```
 1        A    Yes.

 2        Q    Do you have an estimate of when you first got

 3   a disabled placard from the Department of Motor

 4   Vehicles?

 5        A    Yeah.  It was -- I believe it was 2014, '15,

 6   maybe '16, something like that, I think.

 7        Q    Other than a rollator, do you use any other

 8   medical devices to assist you with either walking,

 9   standing, sitting?

10        A    I don't know if they're referred to as -- I

11   use canes.  I have -- I have a half a dozen different

12   types of canes that I use.  I use a wheelchair from time

13   to time.  Not often, thankfully.

14        Q    Is it a mechanized wheelchair?

15        A    No.

16        Q    What would be the reason for using the

17   wheelchair and not the rollator?

18        A    Pain.  Pain is the reason.  Yeah.

19        Q    In other words, you're experiencing different

20   levels of pain?

21        A    Yeah.  At times in the past it's been

22   excruciating.  Spinal stenosis can be excruciating, can

23   be in excruciating pain.  So you can take one step and

24   it's -- you're okay.  Two steps it starts hurting.

25   Three steps it hurts more.  Four steps it really hurts.
```

1          MR. HASHEMI:  No further questions.

2

3                    -FURTHER EXAMINATION-

4     BY MR. GRAVELLE:

5          Q    Did you ever use a cane at the U.S.A. service

6     station we've been talking about today?

7          A    I believe so.

8          Q    On what occasion?

9          A    I don't recall which one of the occasions.

10         Q    Was it the occasion in January of 2018?

11         A    No.  January I'm pretty sure I had the

12    rollator.  And the other occasions, I think I had the

13    cane.  I'm not 100 percent positive which occasions I

14    had the cane and which occasions I had the rollator.

15         Q    Is it possible that you did not have the cane

16    or the rollator on one of those occasions?

17         A    Is it --

18         MR. HASHEMI:  Argumentative.

19              Go ahead.

20              Calls for speculation.

21         THE WITNESS:  Anything is possible.  Not likely.

22    BY MR. GRAVELLE:

23         Q    Can you -- I guess let me rephrase it.  Can

24    you -- on those other occasions, can you recall

25    specifically whether you had the rollator, the cane, or

```
 1                    Reporter's Certificate

 2

 3           I, LELIA C. HASUIKE, a Certified Shorthand

 4   Reporter of the State of California, do hereby certify:

 5           That the foregoing proceedings were taken

 6   before me at the time and place herein set forth; that

 7   any witnesses in the foregoing proceedings, prior to

 8   testifying, were administered an oath; that a record of

 9   the proceedings was made by me using machine shorthand

10   which was thereafter transcribed under my direction;

11   that the foregoing transcript is a true record of the

12   testimony given.

13           Further, that if the foregoing pertains to the

14   original transcript of a deposition in a Federal Case,

15   before completion of the proceedings, review of the

16   transcript [X] was [ ] was not requested.

17           I further certify I am neither financially

18   interested in the action nor a relative or employee of

19   any attorney or any party to this action.

20           IN WITNESS WHEREOF, I have this date

21   subscribed my name.

22   Dated:   November 5, 2019

23                                _____

24                                LELIA C. HASUIKE
                                  CSR No. 11082
25
```

THE SULLIVAN GROUP OF COURT REPORTERS